IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED

10:29 am, 12/5/13

Tim J. Ellis
Clerk of Court

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| VEDE JACOB MILLER | ) | Case No. 13-20384 |
| | ) | CHAPTER 7 |
| Debtor | ) | |

### OPINION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

On November 14, 2013, the court held a telephone hearing on the Motion for Partial Summary Judgment ("Summary Judgment Motion") filed by Vede Miller ("Debtor") and the United States Trustee's ("UST") opposition. At the conclusion of the hearing, the court took the matter under advisement. Having reviewed the record, argument of the parties and applicable law, the court is prepared to rule.

**Jurisdiction**

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334.

**Undisputed facts**

Both parties assert that the facts are undisputed and this is a matter of statutory interpretation.

The UST filed a Motion to Dismiss Debtor's bankruptcy case under 11 U.S.C. § 707(b)(1), (b)(2), and (b)(3).[1] Debtor's Summary Judgment Motion addresses the

---

[1] Unless otherwise noted, all statutory references are to Title 11 of the United States Code.

allegations under § 707(b)(1) and (b)(2). A court may dismiss a case filed by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be an abuse of the provisions of the Chapter 7.[2]

Debtor filed for chapter 7 bankruptcy protection on April 26, 2013. Based upon this filing date, the period for the determining Debtor's current monthly income is October 1, 2012 through March 31, 2013.[3] As required, Debtor also filed his Statement of Current Monthly Income and Means Test (Form B22A). Based upon Debtor's calculations, Debtor asserted that the presumption of abuse did not arise. On July 25, 2013, Debtor filed an Amended Form B22A, recalculating his annualized current income to be the amount of $73,228.36 or $6,111.53 per month. Debtor again asserted that the § 707(b)(1) presumption of abuse did not arise.

The UST disagreed, filing its initial statement indicating the Debtor's case was presumed to be an abuse, and subsequently, on July 10, 2013 filed its motion to dismiss the case. The UST calculated Debtor's current monthly income to be the amount of $6,601.91.

The disagreement about Debtor's current monthly income stems from the pay check Debtor received on October 10, 2013 in the amount of $2,942.66, for wages which were earned prior to the statutory six-month period.

**Discussion**

A party claiming relief may move, with or without supporting affidavits, for

---

[2] § 707(b)(1).

[3] § 101(10A)(A)(i)

summary judgment on all or part of the claim.[4]  The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file and any affidavits show that there is not a genuine issue of any material fact and that the movant is entitled to judgment as a matter of law.  A material fact is one that could affect the outcome of the suit, and a genuine issue is one where the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[5]  The court should determine what facts are not genuinely at issue by examining the pleadings and evidence before it.[6]  The Court should issue an order specifying what facts, including items of damages or other relief, are not genuinely at issue.[7]  The court views the evidence in light most favorable to the nonmoving party but that party cannot rest on the mere allegations in its pleadings and must come forward with evidence to raise a genuine issue.[8]  The court may grant summary judgment for a nonmoving party.[9]

<u>Determining Debtor's current monthly income</u>

The Bankruptcy Code states,

> "The term 'current monthly income' means the average monthly income from all sources that the debtor receives...without regard to whether

---

[4] Fed. R. Bankr. P. 7056(a).

[5] *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1134 (10th Cir. 1994).

[6] *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 976 (10th Cir. 1995).

[7] Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056.

[8] *Id.*

[9] Fed. R. Bankr. P. 7056(f).

such income is taxable income, derived during the 6-month period ending on

    (i) the last day of the calendar month immediately preceding the date of commencement of the case..."[10]

The issue before the court, is whether the definition of "current monthly income" encompasses all of a debtor's income received during the prescribed six-month period,[11] or whether the income must have been both received <u>and</u> earned during that period.

Debtor urges the court to adopt the interpretation that "derived" means "earned." Therefore, "current monthly income" would have to be both received and earned during the look-back period. The UST argues that the court should adopt the view that the definitions of "received" and "derived" are synonymous and includes all income received by a debtor during that period.

The case law regarding this issue is sparse. Bankruptcy courts holding that the income must be both received and derived, (i.e., earned), during the look-back period include the Bankruptcy Court for the Eastern District of Washington ("Washington Bankruptcy Court") and the Western District of Virginia ("Virginia Bankruptcy Court"). In *Arnoux*, the Washington Bankruptcy Court found that the debtor did not have to include wages that were earned in the last two weeks of the look-back period but not paid until after the period expired as the wages had not been received.[12] This court finds that *Arnoux* is not necessarily helpful in interpreting § 101(10A) as its focus was primarily on the "received"

---

[10] § 101(10A)(A)(i).

[11] For purposes of clarity, the court will describe this period as the "look-back period."

[12] *In re Arnoux*, 442 B.R. 769 (Bankr. E.D. Wash. 2010).

part of the statutory language.

Debtor also relies upon *In re Meade* to support his position.[13] The Virginia Bankruptcy Court prorated an annual bonus that the debtor received during the look-back period that was for work performed by the debtor throughout an entire year. The facts of *Meade* case are distinguishable as the circumstances are not similar to the case before this court.

The United States Court of Appeals for the Ninth Circuit discussed the interpretation of current monthly income in *Blausy v. United States Trustee*.[14] However, the issues before the court were the allowable exclusions in calculating current monthly income. The facts of the *Blausy* case are not applicable to the case before this court.

In support of the Trustee's position, the court found case law from the Bankruptcy Courts for the Central District of California ("California Bankruptcy Court") and District of Illinois ("Illinois Bankruptcy Court"). The California Bankruptcy Court, in *In re Katz*, held that the term "derived" in § 101(10A) "provides no additional limiting criterion in order for the income received during the prescribed 6-month period to be included in the calculation of current monthly income." The court required the debtor to include two bonuses in the calculation of his currently monthly income as the funds were received during the applicable 6-month period.[15]

---

[13] *In re Meade*, 420 B.R. 291 (Bankr. W.D. Va. 2009).

[14] *Blausey v. United States Trustee*, 552 F.3d 1124 (Ninth Cir., 2008).

[15] *In re Katz*, 451 B.R. 512 (Bankr. C.D. Calif. 2011).

The Illinois Bankruptcy Court provided a thorough analysis of § 707(b)(1) in *In re Burrell*.[16] Although this was a plan confirmation issue, the court determined that § 101(10A) of the Bankruptcy Code was ambiguous. It recognized that the term "derived" as defined by the Merriam-Webster dictionary "lend[s] some credence to both parties' positions."[17] The court further examined the legislative history to determine Congress's intent. The Illinois Bankruptcy Court concluded that the definition of current monthly income refers to "income received during the prescribed six-month period, and that no additional criterion that the income actually be earned during that period exists or was intended when the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 was drafted and enacted."[18] The court based this on its review that "nowhere is reference made to when income is earned. The phrase 'derived during' is completely absent."[19] The Court concluded that

> "the 'derived during' phrase found its way into the statutory language simply as a result of poor sentence construction and inartful drafting. The "derived during" phrase appears to be surplusage adding nothing substantive to the definition of "current monthly income. Because the "derived during" phrase appears to be surplusage adding noting substantive to the definition of "current monthly income," the Court believes it would be improper to impart meaning to the language."[20]

---

[16] *In re Burrell*, 399 B.R. 620 (Bank. C.D. Ill., 2008).

[17] *Id* at 625.

[18] *Burrell* at 627.

[19] *Id*.

[20] *Id*.

After a review of the statutory language and case law, this court adopts the holding in *In re Burrell*. The Illinois Bankruptcy Court's analysis of the statutory language and legislative intent provides the most reasonable conclusions regarding the interpretation of the definition of calculating current monthly income under § 101(10A).

This court holds that in calculating current monthly income a debtor should include all income actually received by a debtor during the applicable six-month look back period, without relation to when that income was earned. Therefore, the court denies the motion for partial summary judgement on behalf of the Debtor and grants partial summary judgment to the UST under §707(b)(1) and (b)(2).

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

Dated this 4 day of December, 2013.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Brad Hunsicker
    Dan Morse